UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUAN SATURNINO AVILA
LOPEZ,

           Petitioner,

    v.

WARDEN, GLADES COUNTY
DETENTION CENTER,  US
ATTORNEY GENERAL,

           Respondents,

Case No. 2:26-cv-02079-KCD-NPM

                              /

## ORDER

Petitioner Juan Saturnino Avila Lopez has filed a pro se habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.) As best the Court can tell, he claims that his continued detention violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*Id.* at 7-8.) The Government responded in opposition. (Doc. 8.) For the reasons below, the petition is **GRANTED**.

### I. Background

Lopez is a native of Cuba who entered the United States in 1980. An immigration judge later ordered his removal. When that did not come to fruition, he was placed on an order of supervision.

In November 2025, Lopez was again detained. ICE has attempted removal to Mexico, but Lopez was refused for medical purposes. Still, the Government maintains that it intends to send him to Mexico. Lopez argues his removal is not reasonably foreseeable because Cuba does not have a repatriation agreement with the United States and asks this Court to order his immediate release.

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still

here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. at 699. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Lopez satisfies the initial temporal requirement. ICE took him into custody over seven months ago. Because the period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Lopez has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal. He does so by pointing to

3

Cuba and Mexico's refusal to accept him, and he has received no other removal date or travel documents. Indeed, the Government has had many years to deport Lopez, and it has failed. That is more than enough reason to believe his removal is nowhere in sight.

The burden thus shifts to the Government to rebut Lopez's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the record offers no documents, no diplomatic agreements, and no concrete evidence that Lopez will be removed in the near future. (Doc. 8.) Instead, the Government says that Lopez will be sent to Mexico, the same country that rejected him. Because the record contains nothing to suggest that Lopez's removal to Mexico, or anywhere else, is likely, he must be released.

## IV. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Lopez will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the conditions of his prior supervision and any additional conditions that may be imposed. To the extent Lopez raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner Lopez from custody within 48 hours of this order under the prior conditions of supervision or any other conditions reasonably imposed, which Lopez must continue to comply with.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ENTERED** in Fort Myers, Florida on July 2, 2026.

Kyle C. Dudek
United States District Judge